IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| WILLIAM WOOTEN | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| MICHAEL ASTRUE<br>Commissioner of<br>Social Security | : | NO. 11-7592 |

FILED
DEC 17 2012
MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

## MEMORANDUM OPINION

Savage, J.                                                        December 17, 2012

In this social security case, we address whether an Administrative Law Judge ("ALJ") must consider and discuss the bases for a prior disability award when ruling on a claimant's application for benefits made after his benefits had been terminated because he had been incarcerated. We hold that although the prior award of disability benefits is not dispositive, the records that supported that determination are relevant in determining current eligibility for benefits. Therefore, in this case, because the ALJ did not obtain and consider the prior determination and its bases, we shall remand for purposes of developing the record by obtaining and evaluating the evidence that supported the prior disability determination.

William Wooten filed a disability insurance claim on June 6, 2008, claiming a disability onset date of May 1, 1998. He had been awarded Supplemental Security Income ("SSI") benefits in 2002 on the basis of his multiple mental impairments. His

benefits terminated on April 28, 2005, by operation of law, when he was incarcerated.[1] Upon his release from jail, he reapplied for benefits, alleging disability based on his mental impairments and debilitating pain from a cervical spine fracture he sustained in a January 19, 2005 car accident.[2] The claim was initially denied and Wooten filed a request for a hearing.

Wooten represented himself at a hearing held before an ALJ on May 5, 2010. He and a vocational expert testified at the hearing which lasted twenty-one minutes.

The ALJ had Wooten's prison medical records, diagnostic test results and treatment records related to his 2005 spinal injury, and mental health records for the period after his release from jail. The treatment records from Crozer Chester Medical Center/Community Hospital, covering the period June 28, 2008 to November 2, 2009, show that Wooten complained of extreme pain and headaches at each of his monthly visits.[3] Those records also recite that he attended therapy, saw a psychiatrist, reported feelings of depression, was not taking anti-psychotic medications, and denied hallucinations or suicidal thoughts. *Id.* He was proscribed Prozac in April 2010, one month prior to the ALJ hearing, "[d]ue to a recent exacerbation of psychiatric symptoms (hopelessness, anger, paranoia and poor energy) . . . ."[4]

---

[1] SSI payments to an individual who is incarcerated will be suspended, beginning with the first full month in which the individual is incarcerated. *See* 20 C.F.R. § 416.1325(a). If an individual's benefits are suspended for twelve or more consecutive months, the Commissioner terminates the individual's benefits. *See* 20 C.F.R. § 416.1335.

[2] (R. 199-205).

[3] (R. 305-334).

[4] (R. 359).

2

The ALJ also had two psychological assessment reports, dated September 26, 2008 and October 15, 2008, that reached different conclusions regarding Wooten's mental impairments. The author of the September 26, 2008 report personally examined Wooten; the author of the October 15, 2008 report did not. The former concluded that Wooten had marked and extreme limitations as a result of his mental impairments.[5] The latter, a state agency doctor who only reviewed the records and did not personally examine Wooten, found no marked or extreme limitations.[6] A non-physician state agency adjudicator, addressing only the cervical spine component, made a physical Residual Functional Capacity (RFC) assessment. Without considering treating or examining sources, the adjudicator found Wooten capable of light work.[7]

Finally, the ALJ had function reports filled out by Wooten[8] and his aunt,[9] with whom he resides. These reports detail Wooten's functional limitations in his daily activities. At the hearing, the ALJ appropriately asked Wooten about medication he took for his mental health, what he does on a daily basis, his social activities, and his headaches.[10]

The ALJ correctly found Wooten had not engaged in any substantial gainful activity, had not worked for fifteen years, and suffers from several severe impairments, including back and neck disorders, migraines, schizophrenia and paranoia. She

---

[5] (R. 212-220).

[6] (R. 221-224).

[7] (R. 206-211).

[8] (R. 116-128).

[9] (R. 129-139).

[10] (R. 45-57).

3

determined that Wooten's physical and mental impairments did not equal a listed impairment resulting in a finding of *per se* disabled. In determining Wooten's RFC, the ALJ concluded he had no disabling mental limitations. She discounted the September 26, 2008 opinions of the consultative psychologist who had personally evaluated Wooten because they were inconsistent with the lack of mental health treatment in prison,[11] his denial of symptoms at his August 2008 parole psychological evaluation,[12] the parole board evaluator's assessment of Wooten's minimal impairment in social or occupational functioning,[13] and the intermittent post-incarceration therapy treatment history.[14] Instead, she relied on the state agency psychological consultant's opinion because she felt it was supported by "specific reasons for her opinions about the claimant's limitations showing they were well grounded in the evidence of record."[15] Finding Wooten's testimony contradictory, the ALJ discredited his assertions about his social abilities. Finally, the ALJ, stating that no doctor had found Wooten physically incapable of work, adopted the non-physician state agency adjudicator's finding that Wooten was able to perform light work. She cited Wooten's conservative pain treatment plan in discrediting his subjective complaints of disabling pain and the objective medical evidence showing normal gait and motor strength as supportive of the RFC.

---

[11] (R. 177-193).

[12] (R. 313-321).

[13] (R. 191-193).

[14] (R. 305-334).

[15] (R. 28).

4

The ALJ found Wooten capable of light work. She concluded that jobs matching his education, age and mental capacity were available in the economy. Thus, she denied his claim.

Wooten requests review of the Administrative Law Judge's ("ALJ") decision to deny his benefits. He asserts two grounds for remand of the ALJ's decision: (1) the ALJ failed to develop the record with regards to his mental impairments by not obtaining and evaluating the record from his first disability claim; and (2) the ALJ's finding that he is capable of performing light work is not substantially supported by the record.

## Standard of Review

On judicial review, we determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "'more than a mere scintilla;' it means 'such relevant evidence as a reasonable mind might accept as adequate.'" *Thomas v. Comm'r of Soc. Sec. Admin.*, 625 F.3d 798, 800 (3d Cir. 2010) (quoting *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). The substantial evidence test "is not merely a quantitative exercise." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) (emphasis removed).

To facilitate meaningful judicial review, the ALJ must explain clearly and fully the basis for her decision. *Barren Creek Coal Co. v. Witmer*, 111 F.3d 352, 356 (3d Cir. 1997) (citing *Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 1981), *reh'g denied*, 650 F.2d 481 (3d Cir. 1981)). The ALJ must discuss what evidence supports her determination and what she rejected, and state her reasons for accepting some evidence while rejecting other evidence. *Cotter*, 642 F.2d at 705.

## Discussion

Disability benefit claim proceedings "are inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). The ALJ has an affirmative duty to develop the record. *Id.* at 111. Failure to do so requires remand. Remand is necessary where "relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3rd Cir. 1979) (citation omitted).

A developed record provides substantial evidence to support the ALJ's findings. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (citation omitted). Relevant evidence includes medical records, the claimant's testimony about his pain and limitations, medical testimony, vocational expert testimony, and the testimony of any other person necessary to interpret the medical records and the claimant's subjective complaints. 20 C.F.R. §§ 416.912 and 416.913.

The ALJ's duty to develop the record is heightened where a claimant acts *pro se*. "An ALJ owes a duty to a *pro se* claimant to help him or her develop the administrative record. 'When a claimant appears at a hearing without counsel, the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts.'" *Reefer*, 326 F.3d at 380 (quoting *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985)) (internal citations omitted); *Dobrowolsky*, 606 F.2d at 407 (noting that an ALJ must "assume a more active role when the claimant is unrepresented"). It is even more compelling when the *pro se* claimant has a mental impairment. *Currier v. Sec'y of Health, Ed. and Welfare*, 612 F.2d 594, 598 (1st Cir. 1980).

We now consider whether the ALJ adequately developed the record in light of Wooten's *pro se* status and prior history of mental impairments. In *Reefer*, the Third Circuit reversed the District Court because the ALJ did not develop the *pro se* claimant's record by requesting additional medical records despite the lack of information to evaluate the effect of the claimant's injury. *Reefer*, 326 F.3d at 380. In *Mimms v. Heckler*, the case was remanded because the ALJ had not obtained the *pro se* claimant's prior disability insurance records, which the court considered "highly relevant" because the first disability claim related directly to the second disability claim. 750 F.2d 180, 185 (2nd Cir. 1984).

Evidence supporting a valid prior disability claim is relevant to a later claim. How the claimant's condition changed, if at all, is relevant to assessing his current condition.

As stated in 20 C.F.R. § 416.920a(c)(1), concerning the evaluation of mental impairments:

> Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a *longitudinal* picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment.

20 C.F.R. 416.920a(c)(1) (emphasis added).

The inquiry is not limited to the preceding twelve-month period. The regulations require the ALJ to consider all evidence available in the individual's case record. The ALJ must:

> develop a complete medical history of *at least* the preceding twelve months for any case in which a determination is made that the individual is not under a disability. In making any determination the Commissioner of Social Security shall make every reasonable effort to obtain from the

7

> individual's treating physician (or other treating health care provider) all medical evidence . . . necessary in order to properly make such determination . . . .

*Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 297 (3d Cir. 2012) (quoting 42 U.S.C. § 423(d)(5)(B)) (emphasis added). Twelve months is the minimum, not the maximum, period that must be considered. If there is "reason to believe that development of an earlier period is necessary," the Commissioner must obtain and consider records covering that period. 20 C.F.R. §§ 404.1512(d), 416.912(d).

When there is a perceived gap in the historical record, the ALJ has an obligation to obtain the missing information. *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) (citing *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996); *see also Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) ("[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel . . . .") (internal quotation omitted).

In the case of a mental impairment, a lapse in treatment or failure to treat alone is not a basis for finding that the claimant is not disabled. The ALJ must consider why the claimant failed to treat, or sporadically treated, for the mental condition. In *Newell v. Commissioner of Social Security Administration*, the Third Circuit noted that under SSR 96-7p:

> [T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

347 F.3d 547 (3d Cir. 2003) (quoting SSR 96-7p, 1996 SSR LEXIS 4, at *22, 1996 WL 374186, at *5-6 (July 2, 1996)).

Here, acknowledging that Wooten had a history of mental disorders, the ALJ did not assist Wooten in obtaining medical records from his earlier disability claim and providing medical testimony that could have explained what, if anything, changed with respect to his mental impairments. Although the record is not completely silent on his mental impairments, Wooten, like the claimant in *Reefer*, had made the ALJ aware of pertinent evidence through his testimony that he had a substantiated disability claim and had been receiving SSI disability benefits prior to his incarceration.[16] As in *Mimms*, the medical records from his first disability claim are directly related to his current claim. Accordingly, the ALJ had a duty to evaluate that evidence as it related to the evidence before her.

The ALJ did not consider the mental health records prior to Wooten's 2005 imprisonment. She does not mention, let alone analyze, two consultative examination reports, dated November 17, 2003 and December 9, 2003, that were in the record.[17]

Opinions of examining physicians are generally given more weight than non-examining physicians. *See* 20 C.F.R. § 404.1527(c)(1).[18] Nonetheless, the ALJ dismissed the September 27, 2008 consultative examination finding disability,[19] as having "little weight," because it was "significantly different from any of the other

---

[16] (R. 47).

[17] (R. 158-164).

[18] 20 C.F.R. § 404.1527(c) provides a list of factors that are considered in evaluating opinion evidence when the opinion is not that of a treating physician, or when a treating physician's opinion is not given controlling weight. These factors include the length of the relationship, the frequency of examination, and the nature and extent of the treatment relationship.

[19] (R. 212-220).

9

psychological evaluations in the medical evidence."[20] In her analysis, she noted that one month prior to this evaluation, Wooten denied any mental health symptoms in therapy[21] and his prison records do not indicate that he was treated for significant psychological issues while incarcerated.[22] Accordingly, she gave great weight to the findings of the state agency psychologist who only did a records review, specifically stating that "they were grounded in the evidence of record."[23]

Although an ALJ is not required to "search out all the relevant evidence which might be available," *Hess v. Sec'y of Health, Educ. & Welfare*, 497 F.2d 837, 840 (3d Cir. 1974), she must still obtain medical records from the claimant's treating sources to fulfill her obligation to assist the *pro se* claimant in developing the administrative record. *See Reefer*, 326 F.3d at 380 (where medical records before ALJ did not refer to a stroke that *pro se* claimant testified she had suffered, ALJ had a duty to investigate further by requesting additional medical records or receiving testimony from plaintiff's treating physicians); *Isaac v. Astrue*, No. 08-1661, 2009 WL 1492277, at *13 (W.D. Pa. May 28, 2009) (the ALJ failed to adequately develop the record where he relied on opinions by two consultative physicians without obtaining records from *pro se* claimant's mental health care provider); *Sloss v. Astrue*, No. 07-344, 2008 WL 2355853, at *2 (W.D. Pa. June 9, 2008) (the ALJ failed to satisfy his enhanced duty to develop the record and hold a full and fair hearing by failing to seek records from the mental health care

---

[20] (R. 28).

[21] (R. 313-321).

[22] (R. 177-193).

[23] (R. 28).

10

provider listed by the *pro se* claimant in her initial paperwork, discussed by her at the hearing, and noted in the consultative physician's report).

Under the circumstances, the ALJ should have obtained and considered the medical records that formed the basis for the earlier finding of disability. She should have requested these records, compared his pre- and post-incarceration treatment records, and explained any differences or changes in his medical condition. She also should have asked Wooten to explain any ambiguities and inconsistencies. *See Colavito v. Apfel*, 75 F. Supp. 2d 385, 389 (E.D. Pa. 1999).

The ALJ did not explore the reasons for the lapse in Wooten's mental health treatment while incarcerated. She should have. SSR 96-7p; *Newell*, 347 F.3d at 547; *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (holding that the fact that a "claimant may be one of the millions of people who did not seek treatment for a mental disorder until late in the day" was not a substantial reason to reject the argument that an impairment existed). The record does not reveal what mental health treatment was available in prison or what Wooten's actual condition there was. There are notations in the prison records that raise a question about his psychiatric status. According to the records, Wooten had been demonstrating unusual behavior and depression, was delusional, had been diagnosed with schizoaffective disorder, and was diagnosed with non-organic psychosis.[24]

The ALJ did not inquire about Wooten's current treatment and the inconsistencies in the records. Nonetheless, she relied on the lack of treatment and his statements made during the hearing to discredit him. In short, the ALJ failed to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant

---

[24] (R. 188-193).

11

facts." See *Gold v. Sec'y of Health, Educ. and Welfare,* 463 F.2d 38, 43 (2nd Cir. 1972) (citations omitted).

The ALJ knew Wooten had previously been found disabled and his benefits had been discontinued only because he had been incarcerated, resulting in his ineligibility for disability benefits. The ALJ should have considered how, if at all, his condition changed. A comparison between his condition before and after his incarceration was warranted.

Without the medical evidence that supported Wooten's earlier claim for benefits, the record was not fully developed. An evaluation of the earlier medical evidence could have a substantial effect on the credibility and disability determinations the ALJ made regarding the conflicting medical opinions and Wooten's testimony. Therefore, we shall remand the case for development of the record, particularly the testimony and evidence that supported his prior claim.